IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 95-cv-2325-LTB-CBS, 95-cv-2326-LTB-CBS, and 95-cv-2481-LTB-CBS

ALLEN FISTELL,

   Plaintiff,

v.

JOHN W. SUTHERS, Executive Director, Colorado Department of Corrections;
GERALD M. GASKO, Acting Deputy Director, Colorado Department of Corrections;
DONA ZAVISLAN, Food Service Administrator, Colorado Department of Corrections;
LEE HENDRIX, Volunteer Service Coordinator, Colorado Department of Corrections; and
DOES 1 THROUGH 10,

   Defendants.
_____

## ORDER
_____

This matter is before me on Plaintiff Allen Fistell's Motion for a Contempt Citation and Request for Damages **[Doc # 184]**. After considering the parties' arguments, and for the reasons below, I DENY the motion.

### I. Background

Plaintiff is an inmate of the Colorado Department of Corrections (the "CDOC") at its facility in Sterling, Colorado. He practices orthodox Judaism and has followed a Kosher diet since 1998. He was also a plaintiff in *Beerheide v. Suthers*, 82 F.Supp.2d 1190 (D. Colo. 2000); the instant action flows from that case.

In *Beerheide*, Plaintiff and two other CDOC inmates claimed, *inter alia*, that Defendants here (except for Does 1-10) violated his constitutional right to the free exercise of his religion by not providing him Kosher meals in accordance with his faith. *See id.* In *Beerheide*, I concluded that

Defendants must provide Plaintiff a Kosher diet and issued a permanent injunction to that effect (the "Order"). *See id.* at 1200.

Plaintiff alleges the following in his instant motion. On July 10, 2012, Defendants refused to provide him with a Kosher breakfast and lunch while the CDOC's Sterling facility was on lock-down. He was told by staff that if he wanted to eat, he would need to take a non-Kosher food tray. Alluding to the Order, Plaintiff informed facility staff that his Kosher meals were court ordered. Staff replied that, "per Headquarters," a Kosher meal did not need to be provided because the facility was on lock-down. But Plaintiff asserts that he has been in a locked-down correctional facility close to 100 times, including many times at the Sterling facility, and this was the first instance during which he was denied Kosher meals. This motion followed.

## II. Discussion

Plaintiff's motion seeks a contempt citation and damages for the July 10 denial of Kosher meals. Because Plaintiff proceeds pro se, I accord his filings solicitous construction. *See Van Deelan v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

To prevail on his motion, Plaintiff must prove by clear and convincing evidence that (1) a valid court order existed; (2) Defendants had knowledge of the order; and (3) Defendants disobeyed the order. *Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998). "Sanctions for civil contempt may only be employed for either or both of two distinct remedial purposes: (1) to compel or coerce obedience to a court order . . . ; and (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance[.]" *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992) (internal quotations omitted). "Once the moving party establishes a *prima facie* case, the alleged contemnor must produce evidence

explaining his non-compliance." *Ad-X Intern, Inc. v. Kolbjornsen*, 2008 WL 5101304, *4 (D. Colo. Nov. 26, 2008) (unpublished).

Defendants do not contest that Plaintiff establishes a *prima facie* case. *See* Def.s' Resp. They instead argue that, for two reasons, their non-compliance should be excused. The first is that the July 10 violation was the result of a power outage. Defendants explain that on July 10, 2012, at 4:50 a.m., the lights in the Sterling facility's kitchen began flickering and went off. *Id.* at 3, Ex. A. There was a buzzing sound, the electrical panel "popped," and the odor of burning plastic followed. *Id.* The kitchen lost all power, including power to refrigeration, and the back-up generators failed. *Id.* The kitchen was evacuated and placed on lock-down for safety and security reasons. *Id.* At that time, the CDOC had a policy for when an incident occurs resulting in facility lock-down, loss of kitchen facilities, or loss of offender-workers. *See* Pl.'s Reply Ex. A. In such an event, "the food service supervisor shall assess the situation noting what food items are on hand and what resources are available. The availability of [C]DOC employees, offender labor, equipment, and utilities will determine the type of meal service and menus, . . ." *Id.* at § IV.A.1. From this, "[a]n interim menu shall be designed following the menu pattern . . . and utilizing what is on hand." *Id.* at § IV.A.2. In these situations "religious diets [were] not required until the administrative head assesses the situation and makes a determination of when religious diets can be resumed." *Id.* § IV.C.1. Facility staff resorted to this procedure on July 10 for breakfast and lunch. Defendants assert that this is what led to Plaintiff not receiving a Kosher meal–not a deliberate or wanton choice to disregard the Order.

Due to the July 10 events, the CDOC is in the process of implementing Executive Directive 21-12. It specifically addresses the provision of religious meals during emergency situations such

as a facility lock-down and mandates that the suspension or modification of religious diets must have prior approval of the facility administrative head–the warden–with collaboration from the food service administrative head. The directive further delineates a Kosher meal plan that can be provided in situations such as the one that occurred on July 10. Defendants assert but have not confirmed that Executive Directive 21-12 was to be executed by August 27, 2012.

Defendants secondly contend that the motion should be denied because they have substantially complied with the Order. They assert that Plaintiff has consistently received Kosher meals since 1998.

I conclude that a finding of contempt is unwarranted here. Even putting side the question of whether Defendants could have complied with the Order on July 10 given the power outage, *see Donovan v. Burgett Greenhouses, Inc.*, 759 F.2d 1483, 1486 (10th Cir. 1985) (inability to comply with a court order is a defense to contempt proceeding), "diligent efforts resulting in substantial compliance with an underlying order may avert a finding of contempt." *See Ad-X Intern*, 2008 WL 5101304, *4; *see also Universal Motor Oils Co., Inc. v. Amoco Oil Co.*, 743 F.Supp. 1484, 1487 (D. Kan. 1990) (substantial compliance may constitute a defense to civil contempt; technical or inadvertent violations will not support a finding of civil contempt if the violating party has taken "all reasonable steps" to comply with the order); *Bauchman By and Through Bauchman v. West High School*, 906 F.Supp. 1483, 1494 (D. Utah 1995) ("Defendants may assert a defense to civil contempt by showing by clear and convincing evidence that 'all reasonable steps' were taken in good faith to ensure compliance with the court order and that there was substantial compliance.") (quoting *Spectra Sonics Aviation, Inc. v. Ogden City*, 1991 WL 59369 (10th Cir. Apr. 19, 1991)); *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998) (A contemnor may be excused from complying with

a court order "by showing that [he has] made in good faith all reasonable efforts to comply") (internal quotations omitted). The parties agree that since I issued the preliminary injunction in *Beerheide* in 1998, up through July 10, 2012, Defendant has consistently provided Plaintiff with Kosher meals–over 15,700 meals of that kind. *See* Pl.'s Reply at 6 ("The Defendants claim that Plaintiff '. . . has received and/or had access to approximately 15,700 kosher meals since the issuance of the Court's judgment and order.' *This is probably true*, . . .") (emphasis added). The briefs also establish that the two violations at issue here were aberrations, resulting from extenuating circumstances. Serving Plaintiff more than 15,700 Kosher meals over the course of 14 years with just two instances of serving non-Kosher meals certainly qualifies as substantial compliance sufficient to avoid a finding of contempt here. This is particularly true given the context of the two violations at issue. Moreover, Defendants' history of compliance and Executive Directive 21-12 strongly suggests that chance of a future violation arising from a situation akin to that on July 10, 2012, is minimal. It follows, then, that meting out a contempt sanction to deter future violations is unnecessary. To be sure, absolute, perfect compliance is not possible, and when it is not, a violation may be excused. *See Donovan*, 759 F.2d at1486 ("[T]he defendant could avoid a contempt adjudication by showing through clear and convincing evidence that he was unable to meet the requirements of the injunction.") (internal quotations omitted).

Plaintiff nevertheless submits that the policy in effect on July 10, 2012, exhibits Defendants deliberate choice to violate the Order. I need not address this argument because Plaintiff avers that Defendants verily provided him Kosher meals during all previous lock-downs. Pl.'s Mot. at 2 ("Since March of 1998 the Plaintiff has been in [C]DOC facilities that have been on lockdown, probably close to 100 times (including many times here at the Sterling Correctional Facility) and

5

during all these lockdowns Plaintiff has never before been denied his Kosher diet.").

### III. Conclusion

For the foregoing reasons, I conclude that Defendants have averted a finding of contempt for the July 10, 2012, meals. Accordingly, it is ordered that Plaintiff's Motion for a Contempt Citation and Request for Damages **[Doc # 184]** is DENIED.

Date: September   19  , 2012, in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock  
LEWIS T. BABCOCK, JUDGE